1999 ND 50

**Curtis KJONAAS, Plaintiff and Appellee,**

v.

**Josephine KJONAAS, Defendant and Appellant.**

**Civil No. 980183**

Supreme Court of North Dakota.

March 18, 1999.

Donald L. Peterson, of Kenner Sturdevant Peterson Cresap, P.C., Minot, ND, for plaintiff and appellee.

Debra K. Edwardson, of Edwardson Law Office, Minot, ND, for defendant and appellant.

MARING, Justice.

[¶ 1] Josephine Kjonaas appeals from a divorce judgment and from an order denying her motion for a new trial. We reverse and remand.

[¶ 2] Josephine and Curtis Kjonaas were married in 1969. They operated a farming/ranching operation, and Curtis ran a mechanical repair business on the farmstead. Curtis brought this action for divorce in February 1997. An interim order awarded Josephine $300 per month in temporary spousal support and gave her occupancy of the house.

[¶ 3] In October 1997, less then 2½ months before the scheduled trial date, Josephine's attorney moved to withdraw from the case. In an affidavit, he said his withdrawal was based upon conflicts with Josephine, upon Curtis's failure to adequately respond to discovery requests, and upon Josephine's financial inability to pursue additional discovery. The court allowed Josephine's attorney to withdraw over her objections. Josephine had difficulty hiring a new lawyer. She advised the court of her situation and sought a continuance. The court denied the motion for continuance by order dated December 4, 1997.

[¶ 4] Josephine finally was able to hire her present attorney, Debra Edwardson, on December 11, 1997. Trial was scheduled for

December 30. Edwardson was therefore placed in the position of preparing for a divorce trial involving complex financial matters in a matter of 19 days.

[¶ 5] Edwardson attempted to subpoena the parties' records from their bank, but was informed the records were stored in Minneapolis and would not be available before trial. Because Curtis had indicated in earlier discovery answers that the bank records were available for inspection at his attorney's office, Edwardson on December 22 called Curtis's attorney, Donald Peterson, and asked to review the records. Peterson responded that he was unsure whether he had the bank records. On December 23, Edwardson faxed to Peterson a written request to inspect the bank records. Edwardson was advised Peterson was out of town. On December 29, the day before trial, Peterson finally provided copies of eleven months of 1996 bank statements. No statements from 1997 were provided.

[¶ 6] On December 29, Edwardson also learned that Curtis had sold the parties' farmland to his brother in April 1997. Edwardson confirmed the land sale and received a faxed copy of the deed from the register of deeds. In May 1997, a month after this sale, Curtis had sworn in an interrogatory answer he had not sold or transferred any interest in real property. After being confronted with the undisclosed land sale, Curtis on the afternoon of December 29 supplemented his response to this interrogatory to disclose the sale of land to his brother. At the time of trial, Curtis was farming this land on a lease from his brother.

[¶ 7] In prior discovery, Curtis had been required to submit copies of all financial statements prepared during the previous 36 months. In his May 12, 1997, response, Curtis attached various documents but failed to provide a revised financial statement dated April 29, 1997, which disclosed the missing farmland and revised financial information. Curtis never supplemented his discovery response, and Josephine learned of the revised financial statement on the day before trial when she received a copy from the bank.

[¶ 8] Faced with this new information, and with only hours until the scheduled beginning of trial, Edwardson faxed an emergency request for a telephonic conference and a motion for continuance to the court on the afternoon of December 29. After Edwardson faxed this request, but before the telephonic conference was held, Peterson attempted to supplement prior discovery by disclosing the name of an expert witness and providing this witness's written appraisal of the farm and business assets. The written appraisal was dated July 15, 1997, but had never previously been disclosed to Josephine.

[¶ 9] The court held a telephonic conference in the late afternoon of December 29. The court denied Josephine's motion for a continuance and the trial was held on December 30. The court awarded all of the farm and business property, including the house, stored grain, tools, livestock, vehicles, equipment, and machinery to Curtis. Curtis was ordered to pay all of the debts associated with the farming operation. Josephine was awarded her personal livestock, Indian trust land in her name, and some personal property. The trial court did not make specific findings on the values of the marital property, nor did the court make findings on the parties' incomes. The court ordered Curtis to pay spousal support of $600 per month for 60 months, and the parties were ordered to pay their own attorney fees and legal expenses. Josephine's motion for a new trial was denied, and she was ordered to vacate the farmstead. Josephine filed a timely notice of appeal from the judgment and from the order denying her motion for a new trial.

[¶ 10] Josephine asserts the trial court abused its discretion when it failed to grant a continuance the day before trial based upon Curtis's discovery abuses, which denied her a fair opportunity to prepare for trial. We agree.

[¶ 11] A motion for continuance will be granted only for good cause shown. N.D.R.Ct. 6.1(b); *Fahlsing v. Teters*, 552 N.W.2d 87, 90 (N.D.1996); *In re J.S.*, 545 N.W.2d 145, 146 (N.D.1996). The decision to grant or deny a motion for continuance lies within the discretion of the trial court, and its determination will not be overturned on appeal absent an abuse of discretion. *Fahls-*

*ing,* at 90; *Service Oil, Inc. v. State,* 479 N.W.2d 815, 818 (N.D.1992).

[¶ 12] The basis for Josephine's December 29 motion for continuance was Curtis's failure to timely supplement discovery responses, resulting in denial of a fair opportunity to prepare for trial. Rule 26(e), N.D.R.Civ.P., governs supplementation of discovery responses, and provides in part:

(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to

. . . .

(B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.

(2) A party is under a duty seasonably to amend a previous response if the party obtains information upon the basis of which

(A) the party knows that the response was incorrect when made, or

(B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

[¶ 13] We explained the application of the rule in *Dewitz by Nuestel v. Emery,* 508 N.W.2d 334, 339 (N.D.1993):

Rule 26[e] does not establish a fixed time prior to trial within which interrogatories must be supplemented so as to be seasonable. The determination as to seasonableness is necessarily a case by case determination, within the sound discretion of the trial judge. To be seasonable, however, the supplemental response must be made a reasonable time before trial taking into account the purpose of the rule which is the elimination of surprise at trial.

*See also Reimche v. Reimche,* 1997 ND 138, ¶ 4, 566 N.W.2d 790.

[¶ 14] The undisputed facts in this case demonstrate flagrant discovery abuses. Curtis lied in interrogatory responses when he swore he had not sold any of the parties' real property, when in fact he had sold the parties' farmland to his brother less than a month before. In an apparent attempt to hide this land transaction, he failed to turn over a financial statement required by the requested discovery. Curtis never supplemented his discovery responses to rectify this subterfuge until the day before trial, and then only after Josephine's attorney had learned of the sale through other sources. Furthermore, Curtis failed to provide the expert appraiser's opinion on property values, which varied greatly from the values listed on loan documentation and other sources, until the day before trial.

[¶ 15] Josephine's counsel was placed in an untenable position. In addition to having only 19 days to prepare for trial in the first place, she now faced, literally on the eve of trial, an undisclosed expert, entirely new property valuations, and an undisclosed transfer of all of the farmland. There was no opportunity for her to evaluate and prepare to rebut this new evidence before trial.

[¶ 16] The purpose of Rule 26(e) is to eliminate surprise and allow the opposing party a fair opportunity to meet the evidence at trial. *See Reimche,* 1997 ND 138, ¶ 4, 566 N.W.2d 790; *Dewitz,* 508 N.W.2d at 339. Accordingly, the rule requires that supplementation be made a reasonable time before trial. *Reimche,* at ¶ 4; *Dewitz,* at 339. Curtis offers no explanation why the land sale information and expert appraisal were not provided to Josephine until the afternoon before trial. The land sale took place more than eight months earlier, and Curtis had the written expert appraisal for more than five months before trial. The supplementation in this case did not occur a reasonable period before trial, and the denial of a continuance denied Josephine a fair trial and was an abuse of discretion. *Cf. Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473, 481–82 (N.D.1986) (new trial ordered where trial court denied continuance for party to conduct additional discovery to respond to expanded claim for damages made 2½ months before trial). We therefore reverse the judgment and remand for a new trial.

[¶ 17] Josephine asserts the trial court erred in failing to order Curtis to pay her attorney fees. The principal factors to

consider in determining whether to award attorney fees in a divorce action are one spouse's need and the other's ability to pay. *Kautzman v. Kautzman,* 1998 ND 192, ¶ 32, 585 N.W.2d 561. Thus, an award of attorney fees is "inextricably connected" to the other financial provisions in the decree. *Mahoney v. Mahoney,* 1997 ND 149, ¶ 37, 567 N.W.2d 206. Furthermore, in determining whether to award attorney fees, the trial court may take into consideration whether one party's conduct has unreasonably increased the time spent on the case. *E.g., Kautzman* at ¶ 32; *Sullivan v. Quist,* 506 N.W.2d 394, 402 (N.D. 1993).

[¶ 18] Because we are remanding for a new trial on all issues, including property division and spousal support, the financial needs and abilities of the parties may well be different after the retrial. Thus, the prior judgment has no res judicata effect and the trial court will have to reconsider the issue of attorney fees, including fees incurred prior to this appeal.[1] *See Mahoney* at ¶ 36.

[¶ 19] Josephine has also requested an award of attorney fees for this appeal. Although we have concurrent jurisdiction with the trial court to award attorney fees on appeal, we have often expressed our preference that the trial court initially determine attorney fees. *See, e.g., Larson v. Larson,* 1998 ND 156, ¶ 18, 582 N.W.2d 657; *Wagner v. Wagner,* 1998 ND 117, ¶ 11, 579 N.W.2d 207. In appropriate cases, however, we have awarded fees, or have remanded with directions that the trial court determine the amount of fees for appeal. *See, e.g., Fenske v. Fenske,* 542 N.W.2d 98, 103 (N.D.1996); *Martin v. Martin,* 450 N.W.2d 768, 769 (N.D.

1990). In this case, the appeal was necessitated by Curtis's discovery abuses. Under these circumstances, an award of attorney fees on appeal is warranted. We direct the trial court on remand to award reasonable attorney fees for this appeal to Josephine.

[¶ 20] We reverse the judgment and remand for a new trial on all issues.

[¶ 21] VANDE WALLE, C.J., and KAPSNER, J., concur.

NEUMANN, Justice, concurring.

[¶ 22] I agree with much of the dissent. Clearly the district court was confronted with two difficult parties, as the dissent points out, and clearly much of Josephine's difficulty was her own doing. I cannot help but sympathize with a trial court, constrained by docket currency standard, an increasing caseload, and a reduced number of judges, as it struggles to bring busy lawyers and litigants to court, and difficult cases to a conclusion. I have been there and done that, and the experience is very much like herding cats, as town folks might say, or as some of my rural friends might put it, herding pigs.

[¶ 23] Nevertheless, I concur in the majority opinion. The heart of that opinion is the injustice done by Curtis's failure to timely supplement discovery, an injustice dismissed with two short sentences by the dissent. Curtis's active concealment of the sale of the parties' farmland by making a false answer to an interrogatory and by withholding documentary evidence until the very eve of the trial placed Josephine in a situation in which

---

1. Although the Rules of Civil Procedure do not specifically provide sanctions for failure to supplement discovery, the court has inherent authority to impose sanctions for such violations. *See, e.g., Wolf v. Estate of Seright,* 1997 ND 240, ¶ 17, 573 N.W.2d 161; *Dewitz by Nuestel v. Emery,* 508 N.W.2d 334, 339 (N.D.1993). The court has wide discretion to determine an appropriate sanction. *Dewitz,* 508 N.W.2d at 339. On remand, the trial court may consider Curtis's discovery violations and the resultant multiplicity of proceedings in determining whether to award attorney fees to Josephine.

We would additionally caution that, particularly in a case where one party to a divorce action

controls all of the parties' liquid assets, it is the trial court's duty to consider the factors relevant to an award of attorney fees, including whether the parties are on a reasonably level playing field. *See* N.D.C.C. § 14-05-23; *Johnson & Maxwell, Ltd. v. Lind,* 288 N.W.2d 763, 766 (N.D. 1980). Upon remand the trial court should consider whether Josephine needs interim funds for adequate legal representation, discovery, and an expert to appraise the marital property, if appropriate. While we recognize that in many cases the size of the marital estate may not warrant expenditure of extensive fees by the parties, the court must consider whether lack of funds deprives a party of a reasonably equal opportunity to prepare his or her case.

a fair trial was impossible without a continuance. In spite of Josephine's recalcitrance and lack of cooperation, noted by the dissent, I believe Curtis's blatant violations of our discovery rules created a situation so fundamentally unfair that a new trial is now required.

[¶ 24] William A. Neumann

SANDSTROM, Justice, dissenting.

[¶ 25] The record reflects the district court was confronted with two difficult parties, and a marital estate with a negative value.

[¶ 26] The affidavit of Carl O. Flagstad, Josephine Kjonaas's first attorney, who was permitted to withdraw, reflects the primary reason for his motion to withdraw was the refusal of his client to comply with the court's order, and refusal of his client to follow his advice to comply with the court's order. Contrary to the statement of the majority at ¶ 3, Flagstad did not cite "Curtis's failure to adequately respond to discovery requests," but did say: "In addition, through discovery, the Plaintiff has indicated that he has none of the documents that one would normally expect him to have in connection with the farming operation which consequently would have to be provided by others." The court, in denying the motion for a new trial, noted Josephine Kjonaas's refusal to comply with the court's order and advice of counsel, "and that as a result counsel was left without funds with which to prosecute a defense."

[¶ 27] The majority, at ¶ 9, says: "The trial court did not make specific findings on the values of the marital property, nor did the court make findings on the parties' incomes." In the motion for new trial, Josephine Kjonaas complained only of the former, noting the district court said indebtedness exceeded assets. In its memorandum opinion denying the motion for new trial, the district court noted:

Any finding as to the value of the marital estate is of marginal significance because that value is negative.... If indeed a finding is necessary, it would be that, at the time of trial, the Plaintiff was awarded a net marital estate with a negative value of $45,000.00 and that the Defendant was awarded a net marital estate of $8,800.00....

....

The Defendant has disregarded this court's directives, has failed to follow the advice of her previous counsel, purchased a new automobile, and has now sold and appropriated the proceeds to property awarded to the Plaintiff, all the while claiming economic necessity.

[¶ 28] The majority analysis at ¶ 15, to the extent it views the situation from the perspective of the new attorney rather than the party, is flawed. Josephine Kjonaas's failure to hire her current attorney earlier was not the fault of either the other party or the court.

[¶ 29] Curtis Kjonaas's failure to timely supplement discovery, even though the other party was unrepresented, was unacceptable. Nevertheless, even in the motion for new trial, Josephine Kjonaas was not able to identify how she was prejudiced beyond the general assertion.

[¶ 30] As for the failure to disclose the expert witness, the majority relies on *Dewitz by Nuestel v. Emery*, 508 N.W.2d 334, 339 (N.D.1993), to justify a continuance, and now a new trial. Yet in *Dewitz*, the sanction was exclusion of the expert—something not sought here.

[¶ 31] In the final analysis, a fair reading of the record reflects the problems were a result of conduct by both parties. I am not persuaded the district court abused its discretion in denying the last minute motion for a continuance, nor in denying the motion for a new trial.

[¶ 32] Dale V. Sandstrom